IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MICHAEL P. ALCANTAR,

          Plaintiff,                    Civil No. 08-041-MO

v.                                      OPINION AND ORDER

MML INVESTORS SERVICES, INC.,
a Massachusetts corporation, and
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, a
Massachusetts corporation,

          Defendants.
_____

MOSMAN, District Judge:

     Plaintiff Michael Alcantar brought suit against Defendants
MML Investor Services, Inc. (MML) and Massachusetts Mutual Life
Insurance Company (Mass Mutual) alleging state law claims for
securities fraud, negligence, breach of fiduciary duty and common
law fraud.  Defendants' motion to dismiss the securities fraud

Page 1 - OPINION AND ORDER

and common law fraud claims is presently before the Court. Defendants' motion asserts that Alcantar failed to plead both claims with the particularity required by Fed. R. Civ. P. 9(b) and that he failed to meet the statute of limitations on the securities fraud claim.

For the reasons set forth below, the motion is granted in part and denied in part.

## LEGAL STANDARDS

A court should dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if the complaint does not "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (citation omitted) (footnote omitted). "[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Associated Gen. Contractors of Am. v. Metro. Water Dist. of So. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998).

Where a complaint includes allegations of fraud, Fed. R. Civ. P. 9(b) requires more specificity, "including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citations omitted). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances

Page 2 - OPINION AND ORDER

constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

If the court dismisses for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by alleging other facts. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1107 (9th Cir. 2003) (dismissals for failure to meet Rule 9(b) standards are "functionally equivalent" to dismissals under Rule 12(b)(6) and should be without prejudice if defects are curable).

<u>**BACKGROUND**</u>

Alcantar's complaint arises out of the acts of Charles Wesley Rhodes, Jr., a securities broker, who was a registered representative of MML from 1995 until 1998.  MML is a broker-dealer licensed to sell securities and a subsidiary of Mass Mutual, an insurance company.  Rhodes also served as the sole owner and president of Rhodes Company, an investment adviser, which was licensed with Oregon from 1988 to 1994 and from 1998 to 1999.  *SEC v. Charles Rhodes, Jr., et al.*, Case No. CV 06-1353 MO (D. Or.) (#79.)

Alcantar's complaint alleges that Rhodes represented that he

would invest Alcantar's money and established a custodial, discretionary account with Alcantar's money, ostensibly for that purpose.  MML terminated Rhodes near the end of 1998.  At that time, Alcantar had invested approximately $566,208 through Rhodes and paid an additional amount in commissions and fees.

The complaint further asserts that Rhodes, MML and Mass Mutual engaged in fraud from 1995 until 1998.  The complaint states that Rhodes raised money "by representing falsely that he would place funds . . . in managed accounts and invest them."  It also claims that Rhodes "falsely represented . . . that the investments . . . would be made conservatively in blue chip stocks or secure triple A bond funds" and that Rhodes falsely assured Alcantar that his approach satisfied Alcantar's conservative investment philosophy.  The complaint further asserts that "Rhodes misappropriated investor funds that were entrusted to him and used proceeds for his own personal use, and provided phony reports of sales . . . , and untrue reports of the value of Plaintiff's investments held at MML."  Finally, it alleges that "Rhodes sent Plaintiff account statements that were erroneous to cover up the fraud."

Alcantar further alleges that MML, "as the broker-dealer to which Rhodes was registered, had a duty to control and supervise Rhodes."  The complaint also states that Rhodes "acted as an agent for MML and Mass Mutual" and that "MML and Mass Mutual knew

of Rhodes' fraudulent acts and omissions or in the exercise of reasonable care, should have known." Finally, Alcantar claims that MML and Mass Mutual are jointly liable with Rhodes as controlling persons and as participants in the sale "through Rhodes use of their offices, his status as their agent and registered representative, and his affiliation" with them.

Alcantar further alleges that he continued to place investments with Rhodes after Rhodes' departure from MML. In 1998, Rhodes formed  and served as sole owner and president of Rhodes Econometrics, Inc., an investment adviser. *SEC v. Charles Rhodes, Jr., et al.*, Case No. CV 06-1353 MO (D. Or.) (#79). Alcantar invested $730,000 with Rhodes after Rhodes left MML and paid an additional amount in commissions and fees. Alcantar claims that he would not have continued to invest with Rhodes had MML and Mass Mutual complied with their duty to inform him of Rhodes' fraud.

In September 2006, the U.S. Securities and Exchange Commission brought a receivership proceeding against Rhodes, alleging fraudulent and illegal activity in connection with his investment advisory business. *Id.* Alcantar filed this action in January 2008.

## DISCUSSION

### A.    Statute of Limitations for Oregon Securities Fraud Claim

Generally, under Oregon law, a plaintiff must bring an action within three years after an unlawful sale of securities.

Page 5 - OPINION AND ORDER

Or. Rev. Stat. § 59.115(6) (2007).  However, a discovery rule applies to an action "for a violation" of section 59.115(b) or section 59.135.  *Id.*  Actions for violations of those sections "may be commenced within three years after the sale or two years after the person bringing the action discovered or should have discovered the facts on which the action is based, whichever is longer."  Or. Rev. Stat. § 59.115(6).

The Oregon Supreme Court has yet to decide whether the discovery rule applies to nonseller liability claims when those claims assert that the seller violated section 59.115(1)(b) or 59.135.  A federal court, however, "is not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court, but it must ascertain from all available data what the state law is and apply it."  *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982).  Moreover, "[a]n intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Id.* (quoting *West v. A.T.&T. Co.*, 311 U.S. 223, 237 (1940)).

The Oregon Court of Appeals, in *Loewen v. Galligan*,  first addressed the issue of whether the discovery rule applies to nonseller liability claims. 130 Or. App. 222, 882 P.2d 104 (1994).  In *Loewen*, the court held, without further analysis,

that the discovery rule did not apply to plaintiff's section 59.115(3) nonseller liability claim because "[t]he text of ORS 59.115(6) provides that the statute of limitations for a violation of any subsection of ORS 59.115, other than 59.115(1)(b), is three years." *Id.* at 235.

The Court of Appeals revisited the issue in *Anderson v. Carden*, 146 Or. App. 675, 678-89, 934 P.2d 562 (1997). In *Anderson*, the court held that, because the nonseller liability claim rested on the seller's violation of 59.135, it was "an action for a violation of ORS 59.135" and thus fell within the discovery rule. *Id.* at 684. In reaching this decision, the court applied Oregon Supreme Court precedent on statutory construction and that court's explanation of section 59.115 as a civil remedy for violations of securities laws. *Id.* at 680-82. In addition, the court distinguished *Loewen* because that case addressed a later version of the statute and "[n]o one argued the applicability of the two-year statute of limitations that applies to actions brought under ORS 59.135." *Id.* at 685-86.

The Oregon Court of Appeals' decision to distinguish rather than overrule *Loewen* produced a less than clear result. In *Loewen,* the court refused to apply the discovery rule to a nonseller liability claim arising out of a seller's 59.115(1)(b) violation, whereas *Anderson* extended the rule to a nonseller liability claim arising out of a seller's 59.135 violation. The

text of the statute, however, states that the discovery rule
applies to actions under sections 59.115(b) *and* 59.135.  Or. Rev.
Stat. § 59.115(6).  The court has not resolved this discrepancy.
Rather, in *Ainsle v. First Interstate Bank of Oregon*, the court
of appeals applied the discovery rule to a nonseller liability
claim because the plaintiffs' allegations of unlawful activity
"included acts that violated ORS 59.135." 148 Or. App. 162, 186-
87, 939 P.2d 125 (1997).

Here, similarly, Alcantar's allegations against Rhodes
include acts that violate section 59.135.  The Oregon Court of
Appeals addressed a similar situation in *Anderson* and *Ainsle* and
applied the discovery rule to the nonseller liability claim.  In
*Anderson*, the court considered and rejected the arguments
Defendants make here.  Thus, Defendants have not presented "other
persuasive data that the highest court of the state would decide
otherwise." *Estrella*, 682 F.2d at 817.  Accordingly, the
discovery rule applies to Alcantar's Oregon nonseller liability
securities fraud claim.  *See Battig v. Simon*, No. 00-972, 2001
U.S. Dist. LEXIS 22318, at * 18-20 (D. Or. Dec. 6, 2001)
(applying discovery rule to nonseller liability claim asserting
seller's violation of section 59.115(1)(b)).  Defendants motion
to dismiss the Oregon securities fraud claim as time-barred is
therefore denied.

**B.    Fed. R. Civ. P. 9(b)**

Rule 9(b) "applies to 'averments of fraud' in all civil cases in federal district court." *Vess*, 317 F.3d at 1103. In cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud. *Id.* at 1104. "Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.*

**1.    Sufficiency of Common Law Fraud Allegations**

Under Oregon law, the elements of a fraud claim are: 1) a representation; 2) its falsity; 3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; 5) intent that the recipient act on it in a manner reasonably contemplated; 6) the recipient's ignorance of its falsity; 7) reliance on its truth; 8) the recipient's right to rely on it; and 9) consequent and proximate injury. *Vigilante.com, Inc. v. Argus Test.com, Inc.*, No. 04-413, 2005 U.S. Dist. LEXIS 45999, at *20 (D. Or. Sept. 6, 2005) (citing *Rice v. McAlister*, 268 Or. 125, 128, 519 P.2d 1263 (1974)).

**a.    Allegations Concerning Fraudulent Scheme**

Under Rule 9(b)(6), when a plaintiff alleges a false statement, the plaintiff must set forth what is false about the statement and why it was false when made. *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)). A

Page 9 - OPINION AND ORDER

plaintiff demonstrates a statement was false when made if the plaintiff can demonstrate "inconsistent facts that had existed all along and were later revealed." *Id.* (internal citation omitted). In that situation, "a plaintiff may simply set forth [those] facts (along with allegations of time, place and scienter) and satisfy Rule 9(b)." *Id.* Rule 9(b), however, does not require any particularity in connection with an averment of scienter. *Id.* at 1082 n.3.

Here, Alcantar can demonstrate falsity because inconsistent facts existed all along and were later revealed. The complaint states "Rhodes misappropriated investor funds that were entrusted to him and used proceeds for his own personal use, and provided phony reports of sales to Plaintiff, and untrue reports of the value of Plaintiff's investments held at MML." (#11, ¶ 11(e).) The complaint also alleges "Rhodes sent Plaintiff account statements that were erroneous to cover up the fraud." (#11, ¶ 11(f).) The complaint thus sets forth the facts establishing the fraudulent scheme. It identifies the communications at issue, the time frame they were sent and the parties to them. Plaintiffs have thereby sufficiently alleged a claim that Rhodes engaged in fraud.

### b. Allegations of Defendants' Participation

When an alleged fraudulent scheme involves multiple defendants, the plaintiff must identify the role of each

defendant in the scheme. *Swartz*, 476 F.3d at 765.  "[T]he representations and omissions of an officer or agent of a corporation may be imputed to the corporation, and a corporation may be held vicariously liable." *Pincetich v. Jeanfreau*, 699 F. Supp. 1469, 1475 (D. Or. 1988).  However, conclusory allegations that defendants were acting in concert, "acting as agents" or were "active participants in the conspiracy," without any stated factual basis, are insufficient as a matter of law. *Swartz*, 476 F.3d at 764-65.

Here, Alcantar's common law fraud claim does not provide facts to support its allegation that MML and Mass Mutual knew of Rhodes fraud.  Accordingly, the allegations are not sufficiently specific to show that they made any fraudulent representations or omissions.

Alcantar similarly fails to sufficiently allege that an agency relationship existed between Rhodes and Mass Mutual. Although the complaint alleges that Rhodes acted as Mass Mutual's agent, his only factual allegation concerning an agency relationship is that "MML and its registered representatives, including Rhodes, promoted themselves as affiliates of Mass Mutual."  This statement is unclear as to whether it was MML or Rhodes who promoted an affiliation with Mass Mutual and whether those promotions were made to Alcantar. Thus, the common law fraud complaint against Mass Mutual is dismissed with leave to

Page 11 - OPINION AND ORDER

amend.  Upon amendment, Alcantar should provide facts to support the existence of an agency relationship between Rhodes and Mass Mutual, such as whether Rhodes promoted himself to Alcantar as an affiliate of Mass Mutual.

Alcantar, does, however, sufficiently allege responsibility on the part of MML.  The complaint states that "Rhodes was a registered representative of MML under securities laws."  It further states that Rhodes provided untrue reports of the value of Alcantar's investments held at MML.  Thus, it sufficiently alleges an agency relationship such that Rhodes' acts could be attributed to MML.  *See Pincetich*, 699 F. Supp. at 1475.

Finally, Defendants state that Alcantar's complaint failed to indicate how they are liable for activities that took place after Rhodes left Defendants' employ in 1998.  The complaint, however, asserts a proximate cause theory.  The claim states that Defendants are responsible for all of Alcantar's losses because he would not have continued to invest with Rhodes "but for Defendants' . . . concealment of Rhodes' fraudulent representations."

### 2.    Sufficiency of Oregon Securities Fraud Claim

"[T]he liability of a nonseller participant under ORS 59.115(3) is predicated on the violation of the seller." *Anderson*, 146 Or. App. at 683.  Thus, "[p]roof of direct, unlawful activity by a defendant "is not essential to establish

its liability as a participant." *Mann v. U.S. Bank*, 229 F. Supp. 2d 1133, 1138 (D. Or. 2002) (internal citation omitted). Morever, lack of knowledge is "an affirmative defense to be established by the defendant." *Adams v. American Western Secur., Inc.*, 265 Or. 514, 529, 510 P.2d 838(1973). Therefore, if a complaint sufficiently pleads primary liability, it need only allege sufficient facts to establish that the nonseller defendant participated or materially aided in the sale or controlled the seller. *See Mann*, 229 F. Supp. at 1138-39 (complaint sufficiently alleged nonseller liability where it alleged defendants made phone calls, prepared documents, attended promotional meetings and guaranteed debt in furtherance of fraudulent sale).

Here, Alcantar has sufficiently alleged nonseller liability against MML but has failed to sufficiently plead Mass Mutual's liability. As an initial matter, as explained in the common law fraud claim analysis, Alcantar has sufficiently pled Rhodes' primary liability. In addition, Alcantar has alleged facts that indicate that MML aided, participated in or controlled the fraudulent sales because his complaint states that Rhodes acted as MML's registered agent. The complaint further states that he used Defendants' offices – without specifying MML or Mass Mutual. The complaint, however, makes no other factual allegation concerning the control or participation of Mass Mutual. As a

result, the Oregon securities fraud claim against Mass Mutual is dismissed with leave to amend.  Upon amendment, Alcantar should provide facts to indicate how Mass Mutual aided, participated in, or controlled Rhodes' fraudulent acts, including, for example, whether Rhodes used Mass Mutual's offices.

<u>**CONCLUSION**</u>

Defendants' motion to dismiss the Oregon securities fraud claim on statute of limitations grounds is DENIED.  Defendants motion to dismiss the Oregon securities fraud claim and the common law fraud claim is GRANTED in part and DENIED in part.  The two claims sufficiently plead MML's liability.  The Oregon securities fraud and common law fraud claims against Mass Mutual are DISMISSED with leave to amend.


IT IS SO ORDERED.

Dated this <u> 25th </u> day of June, 2008.



<u>/s/ Michael W. Mosman           </u>
Honorable Michael Mosman
United States District Judge